## Lee Irving v. The State.

1. Evidence. — After laying a proper predicate, the prosecution introduced the written testimony of a State's witness, taken at the examining trial of the case, and then, over objection by the defence, was allowed to supplement that testimony by oral proof of the statements deposed to by the witness at the examining trial. *Held*, error.

2. SAME — CHARGE OF THE COURT. — Note evidence in a trial for assault with intent to rape, which made it necessary that the charge of the court should submit to the jury the distinct issue whether the assault was made with the intent to commit rape upon the prosecutrix, or only with intent to have sexual intercourse with her.

APPEAL from the District Court of Webb.    Tried below before the Hon. J. C. RUSSELL.

A clear exposition of the case will be found in the opinion. As the predicate for the introduction of the testimony given by the injured female at the examining trial, the State proved that she was confronted upon that occasion by the defendant and his counsel, and soon thereafter removed from Texas to the republic of Mexico, and had become a permanent resident thereof; that legal process for her had been duly issued to the counties of Webb and Cameron, and had been returned " not found;" and that all diligence had been ineffectually employed to find her in this State.    The document containing her testimony at the examining trial was produced, and exhibited to witnesses who heard her testify and saw her append her signature to the writing.

A term of four years in the penitentiary was the punishment assessed against the appellant.

No brief for the appellant.

*W. B. Dunham,* for the State.

WHITE, P. J.    Appellant was indicted and convicted of an assault with intent to commit rape upon the person of one Conception de la Rosa, a female ; the charge being that the attempt was made by force.    Appellant was a negro soldier, the alleged injured female a Mexican girl twelve or thirteen years of age, whose mother was either lawfully married to or cohabited with another negro soldier, the comrade or messmate of defendant, and the latter appears to have been upon terms of perfect equality and intimate friendship with the family of the girl.    The facts immediately

connected with the perpetration of the offence, as stated in the written testimony of the prosecutrix, taken at the examining and read without objection under a proper predicate on the final trial, are as follows, in substance : The mother of the prosecutrix was extremely ill, and believed to be dying, and defendant was sent for to aid in nursing her. During the night he laid down upon a pallet on the floor, and the girl was lying upon the bed with her mother.  Detailing what occurred, she says :  " Lying by my mother's side, he (defendant) got up to lay down by me, without his having any right.  My mother never gave him any right to use my person.  *  *  *  This happened about twelve o'clock at night.  The assault upon me was the using of my person without my permission.  *  *  *  He was sleeping on the little bed, then got up and laid by my side.  He would lay on my breast and I would push him off, and he would come back again.  He told me to let him alone.  He didn't say anything but that.  Two times I pushed him off, and the third time that I woke up my mother was dead.  *  *  *  This happened the night that my mother died.  Only God knows at what time he first tried to lay on my breast.  When I woke up I found him on my breast and pushed him, and I told him to let me alone and keep off my breast.  He did not answer ; he got off then, and I got off the bed and went to ask for a candle to dress my mother, because she was dead.  The first time I was asleep, when this man, Lee Irving, tried to jump on me.  The second time he tried to raise my clothes, and I felt it and pushed him off and turned on the other side.  The third time he tried to put his part on me, and I got up and told him to light the candle.  I went to the next house and asked for help, and for a lamp and oil, and to come assist me to dress my mother.  *  *  *  The first time he tried to jump on me I told [asked] him if he was not ashamed to do such things before my mother.  He answered nothing.  *  *  *  I have already said that it was not with my consent that he

raised my clothes. No conversation passed between myself and accused on that night. He came there to help my mother all he could." This is the written statement of the prosecutrix, which was read. In addition thereto, other witnesses were allowed to testify, over objections of defendant, to further statements made by the prosecutrix at the time, but not embraced in the written statement. These statements, however, add but little weight to the written narrative. They were inadmissible as evidence, because not contained in the written statement, which purported to be the entire testimony; and the court erred in permitting their introduction when objected to by defendant, as shown by his exception reserved in the statement of facts, at the time.

In the charge to the jury, the court, it is true, defined both an assault with intent to commit rape and an aggravated assault, and told the jury that in case they acquitted of the former they might convict of the latter offence, if they believed they were warranted in doing so under the evidence. But we think, as applicable to the peculiar facts of this case, the court should have presented the issue more pertinently and distinctly. The issue arising upon the facts was, did defendant make the assault with intent to commit rape, or did he make the assault with intent merely to have improper connection with the prosecutrix? This issue should have been squarely submitted to the jury.

As was said in *Pefferling* v. *The State:* "Obviously there is a manifest distinction between *an assault to commit a rape* and *an assault with an intent to have an improper connection.* Any such violent or indecent familiarity with the person of a female, against her will, when the latter is the extent of the purpose and intent of the aggressor, is an aggravated assault, and should be punished as such. But whatever may be the cause or brutally obscene character of the assault, if it appear from the evidence that it was not the object or intent of the aggressor to accomplish his desired purpose by force, against the will and without consent, then the

more aggravated offence has not been committed." 40 Texas, 486; *Curry* v. *The State*, 4 Texas Ct. App. 574; *Nathan House* v. *The State*, decided at the present term, *ante*, p. 53.

Because the court erred in admitting illegal evidence, and because the charge of the court did not sufficiently present the law applicable to the main issue in the case, the judgment is reversed and the cause remanded.

*Reversed and remanded.*